DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL E. CARPETNER<br>Petitioner<br>v.<br><br>MERRICK B. GARLAND,<br>UNITED STATES ATTORNEY GENERAL<br>Respondent | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE No. 3:22-cv-00725 (JAM)<br><br>JUNE 23, 2022 |

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO DISQUALIFY AUSA NEERAJ PATEL

TO THE HON. JEFFREY A. MEYER, MAY IT PLEASE THE COURT:

NOW COMES THE PETITIONER, Daniel E. Carpenter (Petitioner), pursuant to this Court's inherent power to preserve the integrity of the adversary process, to respectfully request that this Court disqualify AUSA Neeraj Patel from having anything to do with this 2241 Petition because of his egregious prosecutorial misconduct in Petitioner's Connecticut case in front of Judge Chatigny (See 3:13CR226 (RNC)). Petitioner is exceedingly grateful to the Court that it ordered AUSA Michelle McConaghy to be served to represent General Garland. Petitioner has no objection to AUSA McConahgy or any AUSA in Washington, D.C., representing General Garland, who is named in this case in his official capacity only.

1

I.  LEGAL STANDARD

A court's authority to disqualify attorneys "derives from [its] inherent powers to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)(quoting *Bd. Of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). *Bakken Res., Inc. v. Edington*, No. 15-CV-08686 (ALC), 2017 WL 1184289, at *2 (S.D.N.Y. Mar. 29, 2017). A motion to disqualify is "committed to the sound discretion of the district court." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994)(citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 71 (2d Cir. 1990)). "The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)(quoting *Bd. Of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

Disqualification is warranted where "an attorney's conduct tends to taint the underlying trial," *Nyquist*, 590 F.2d at 1246, because "other ethical violations can be left to federal and state disciplinary mechanisms. *Hempstead Video*, 490 F.3d at 132; *see also Walker*, 2021 WL 930348, at *3 (permitting disqualification if "an attorney's conduct tends to taint the underlying trial")(quoting *Giambrone v. Meritplan Ins. Co.*, 117 F.Supp. 3d 259, 267 (E.D.N.Y. 2015)). *Galloway v. Cnty of Nassau*, No. 19CV5026AMDJMW, 2022 WL 681065, at *3 (E.D.N.Y. Mar. 7, 2022).

As the Supreme Court stated in *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 802-04 (1987):

> In *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), this Court declared:
>
> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape nor innocence suffer.
>
> This distinctive role of the prosecutor is expressed in Ethical Consideration (EC) 7-13 of Canon 7 of the American Bar Association (ABA) Model Code of Professional Responsibility (1982): **The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict.** Because of this unique responsibility, federal prosecutors are prohibited from representing the Government in any matter in which they, their family, or their business associates have any interest. 18 U.S.C. § 208(a). Furthermore, the Justice Department has applied to its attorneys the ABA Model Code of Professional Responsibility, 28 CFR 45.735-1(b) (1986), which contains numerous provisions relating to conflicts of interest. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 802–04, (1987).

Because AUSA Patel has violated all of the rules of professional conduct in front of Judge Chatigny—he should not be allowed to "taint" this 2241 Petition as well.

## II.  ARGUMENT

To be clear, in June 2015, Judge Underhill ordered the return of all of boxes unlawfully seized from Petitioner's office on April 20, 2010—and the Government has refused to return those boxes, despite Judge Underhill's order from seven years ago. In that Order, Judge Underhill specifically referenced a number of boxes that dealt with Petitioner's case in Boston (the subject of this 2241 Petition) that were clearly marked as "Attorney-Client Privileged," according to Judge Underhill's 2015 Order. Even worse, AUSA Patel's partner in egregious prosecutorial misconduct is AUSA David Novick, who during the second unlawful raid of

Petitioner's Office on May 26, 2011 ordered the seizing of certain Boxes from the first raid that were held at the offices of Petitioner's Attorneys, Halloran & Sage. Petitioner did not know about this "Secret Subpoena" until November of 2020, but this type of conduct has been illegal in this country since Justice Holmes described why unlawfully seized property could "not be used at all" in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). *See* AUSA Novick's Secret Subpoena, attached as Exhibit One. AUSA Novick and AUSA Patel will be facing huge lawsuits in the coming year for their unlawful acts. *See, e.g.* Damage Calculation in front of the Honorable S. Dave Vatti, attached as Exhibit Two.

But the point is that "Justice" in the Second Circuit should not be determined by which Judge you have or certainly not which prosecutor prosecutes your case. All prosecutors must be held to the *"Berger"* standard, which is quoted in Petitioner's 2241 Petition because Petitioner complained of AUSA Mark Quinlivan in his Boston case to both General Garland and Justice Breyer. Perhaps the only two prosecutors in the Country worse than AUSA Quinlivan in Boston are AUSA Patel and AUSA Novick in Connecticut.

For example, in *United States v. Nejad*, 487 F. Supp. 3d 206 (S.D.N.Y. 2020), Ali Nejad was lucky that he had Judge Alison Nathan, who not only vacated his conviction for only one *Brady* exhibit being left out, but the prosecutors in that case offered to drop the charges once they realized their mistake. Despite the fact that the Government only overlooked one piece of *Brady* evidence, Judge Nathan required that every prosecutor in the District read her opinion and sign a letter to the fact that they indeed read her opinion. Judge Nathan still referred the case to OPR for review.

Judge Nathan was also the Judge in *United States v. Benjamin Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017), where she determined the Search Warrant was defective on its face because the Search Warrant Affidavit was not attached to the Search Warrant and the Government dropped all charges against Mr. Wey. Obviously, the two Search Warrants in Petitioner's Connecticut case were far more defective than the Search Warrants in *Wey* or *In re 650 Fifth Ave*, 934 F.3d 147 (2d Cir. 2019)—but AUSA Patel and AUSA Novick said there was nothing wrong with either search despite the fact the Search Warrant Affidavits were not attached to either Search Warrant as required by *Groh v. Ramirez*, 540 U.S. 551 (2004) and *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013).

Petitioner does not want to belabor the point, but during Petitioner's trial in February-March of 2016, AUSA Patel not only withheld vital *Brady-Jencks* information including statements of Stef Cherneski and Ed Waesche, who were the main witnesses against Petitioner in his Bench Trial in front of Judge Chatigny, but AUSA Patel knowingly presented false evidence including the "Big Lie" that Petitioner changed the Charter Oak Trust documents so that he could buy the "Beach House in Rhode Island." *See* Government's Press Release attached as Exhibit 3.

However, documents submitted to this Court prove that AUSA Patel is a liar that submitted unlawfully seized documents in Petitioner's trial and submitted perjurious testimony to Judge Chatigny that should result in his immediate disbarment as well as the granting of Petitioner's 2255 in front of Judge Chatigny. Perhaps the clearest bit of evidence that proves that AUSA Patel lied to Judge Chatigny is the September 2019 Affidavit of Sharon Siebert submitted in this case attached as Exhibit 4. *See also Universitas Education, LLC v. Benistar, et al*, 3:20-cv-00738-JAM Dkt No. 103, Exhibit 7 and Dkt No. 104, Exhibit 3.

Sharon Siebert's Affidavit from September 2019 clearly states that the Universitas principals knew that Section 6.01 reserved 20% of the Death Benefits to the Charter Oak Trust. See Exhibit 4 Paragraph 13. But this is the Section of the Charter Oak Trust that AUSA Patel told Judge Chatigny was changed by Petitioner so that he could buy the Beach House in Rhode Island despite the fact that the Ed Waesche's FBI 302 Report says that Petitioner was looking at the property in 2006 and Petitioner agreed to buy the property in January 2009 before Lincoln settled the Wayne Bursey lawsuit in May of 2009. The lawsuit against Lincoln was not dismissed until December of 2009. Once again, it was attorneys from Halloran & Sage that represented the Charter Oak Trustee, Wayne Bursey, in his lawsuit against Lincoln involving the Sash Spencer proceeds that Universitas had already disclaimed in July of 2008. See attached as Exhibit 5 an agreement between Mary Spencer—Sash Spencer's Widow—and Universitas where Universitas gave up all claims to the Charter Oak Trust proceeds in July 2008—a month after Sash Spencer died—because the insurance proceeds were clearly payable to Grist Mill Capital, LLC pursuant to the Beneficiary Designation Form attached as Exhibit 6.

In July 2008, Sharon Siebert knew that she did not visit her lover, Sash Spencer, as he was dying in the ICU in May of 2008, but rather forged the change of Beneficiary Designation Forms and had her neighbor, Barbara Kniffen, sign as Notary. Now 14 years later, she is telling a new lie that Mr. Carpenter stole the money, because that was the lie AUSA Patel created in front of Judge Chatigny. ASUA Patel even allowed the corrupt and fraudulent attorney for Universitas, Joseph Manson, to testify at Petitioner's sentencing hearing four years ago, stating to Judge Chatigny that Petitioner had stolen the proceeds that Judge Chatigny had determined to be the elicit proceeds of fraud supporting the Money Laundering counts of Petitioner's Superseding Indictment, meaning that Universitas was not entitled to those proceeds either.

Similarly, last Friday June 10, 2022—Counsel for Universitas once again submitted the January 2016 Waesche Affidavit in their new untimely effort to seek sanctions against Petitioner. While Universitas continues to make a big deal of the Affidavit—it was largely signed off by Waesche's attorney because Waesche planned on invoking the Fifth Amendment and so counsel for Universitas drafted it for him to their liking. See Waesche Affidavit attached as Exhibit 7.

But now, by not providing Petitioner with the Waesche Affidavit before Petitioner's trial AUSA Patel committed a *Brady-Jencks-Giglio-Bagley* violation of the highest order, which would have resulted in AUSA Patel's disbarment had he appeared in front of Judge Nathan. Waesche admitted lying on the insurance applications, which Petitioner did not fill out—not even a single application for the Charter Oak Trust—and Petitioner never lied to anyone about anything at anytime. But AUSA Patel never bothered to explain to Judge Chatigny as to why Petitioner would allegedly change the Trust document to give 20% extra to the Charter Oak Trust if his true motive was to "steal" all of the policies—and the death benefits—for himself. But for the purposes of this motion, it suffices to say that Petitioner did not see the Waesche Affidavit until he received the Subpoena at issue in the Discovery Dispute in front of Judge Spector. That same document, the Waesche Affidavit, just reappeared last week and Judge Spector has ordered Petitioner to reply to Universitas untimely renewed motion for contempt against Petitioner. But AUSA Patel had an obligation to turn over that Affidavit before Petitioner's trial and the proof is overwhelming that Universitas supplied AUSA Patel and his partner in prosecutorial misconduct, AUSA Novick, with that very same Affidavit among thousands of other documents. *See e.g.* Letter to Dick Brown attached as Exhibit 8, citing that the Government received many documents from Universitas. Therefore, respectfully Petitioner suggests that had his case been in front of Judge Nathan, AUSA Patel would have been disbarred

and Petitioner would not have been sentenced to 30 months. The Attorney-Client-Privileged Boston documents were seized from Petitioner's office in 2010 and then from Petitioner's Attorneys' office in 2011 by AUSA Novick and AUSA Patel thereby resulting in the worse unlawful seizure since Justice Holmes's decision in *Silverthorne* and Justice Brandeis's solemn warning in *Olmstead*:

> Decisions of this Court applying the principles of the *Boyd* case have settled these things. Unjustified search and seizure violates the **Fourth Amendment**, whatever the character of the paper; whether the paper when taken by the federal officers was in the home, **in an office**, or elsewhere; whether the taking was effected by force, by fraud, or in the orderly process of a court's procedure. From these decisions, it follows necessarily that the Amendment is violated by the officer's reading the paper without a physical seizure, without his even touching it, and that use, in any criminal proceeding, of the contents of the paper so examined -- as where they are testified to by a federal officer who thus saw the document, or where, through knowledge so obtained, a copy has been procured elsewhere -- **any such use constitutes a violation of the Fifth Amendment**.
>
> The protection guaranteed by the Amendments is much broader in scope. **The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness.** They recognized the significance of man's spiritual nature, of his feelings, and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. **They conferred, as against the Government, the right to be let alone -- the most comprehensive of rights, and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the Government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment**. And the use, as evidence in a criminal proceeding, of facts ascertained by such intrusion must be deemed a violation of the Fifth.

*Olmstead v. United States*, 277 U.S. 438, 485 (1928)(Brandeis, J., dissenting).

### III. AUSA PATEL IS CLEARLY BIASED AGAINST THE PETITIONER

Since the unconstitutional and untimely filing of the Superseding Indictment against Petitioner in May of 2014 in the Connecticut case, AUSA Patel has filed dozens of documents betraying his animus against Petitioner and his disrespect of the Constitution and his duty to do

"Justice" as stated in *Berger*. AUSA Patel has written many false and defamatory things about the Petitioner—but none of them are actionable because of the absolute immunity enjoyed by prosecutors. However, if a prosecutor does something out of line—like lie to the Court—as AUSA Patel has done many times, they should be reported to the Office of Professional Responsibility (OPR) for reprimand or disbarment. Rather than bog down the Court with two-dozen examples of AUSA Patel's violations of his oath and duty to uphold the Constitution, Petitioner will just show one last exhibit that this Court will readily understand the significance of. When Justice Brandeis wrote about the seizure of documents a century ago in *Olmstead*, he though the seizure in *Boyd* was the worse case in the history of the United States.

Petitioner respectfully submits that the two attacks on 100 Grist Mill Road were far worse, because *Boyd* only involved a receipt for a few panes of glass. But attached as Exhibit 9 is Petitioner calculating in his own handwriting a payment of $19,800,000 to be paid to Universitas calculated in May of 2009. Forget the fact that the Attorney for Universitas, Attorney Manson, has continued to call Petitioner a "thief" that "stole" the Sash Spencer proceeds, but this "piece of paper" was seized from Petitioner's office on April 20, 2010 and then was reseized by AUSA Novick's "Secret Subpoena" to Halloran & Sage on May 26, 2011 and then was used against this Petitioner at his trial in March of 2016. Agent Lynn Allen introduced this letter as part of an "ESAD Letter" and an "F-You email" that Petitioner sent to his alleged co-conspirators Jack Robinson and Don Trudeau, who were anxious to send the money out to the Broker Bruce Mactas, who is listed in Petitioner's Superseding Indictment as yet another co-conspirator of Petitioner. While it is true that Petitioner sent the "F-You" email—it is because they miscalculated the amount to be sent to Universitas and the Jack Robinson calculations were at $11,000,000 which notice he sent to Universitas in a later letter.

But how did AUSA Patel use this unlawfully seized piece of evidence that would make Justice Brandeis turn in his grave or Judge Nathan send him to the OPR? He literally told Judge Chatigny in his closing argument that if you disagreed with Petitioner, he would "swear" at you. True Story. It is in the record. Swearing is, of course, not one of the five factors that must be proven beyond a reasonable doubt in a Mail & Wire Fraud case (See Charles Doyle's Report to Congress on Mail and Wire Fraud by the *Congressional Research Service*). So Petitioner offered nearly $20,000,000 to Universitas—but their attorneys turned it down and wanted more. Significantly, Petitioner mentioned Section 6.01 in his handwritten notes of May 2009 and so did Sharon Siebert in her Affidavit of September 2019.

The reason AUSA Patel should be disqualified from this case—if not disbarred—is because he used this piece of unlawfully seized evidence to defame Petitioner rather than realize the "exculpatory" nature of this unlawfully seized piece of evidence that was presented in Court against Petitioner, which is clearly a violation of both the Fourth and Fifth Amendments, but in truth the exhibit was exculpatory.

A "good prosecutor" like the ones Ali Nejad was lucky to have in front of Judge Nathan would have seen the notes were from May 2009. Sash Spencer died in June of 2008 and the insurance applications "not-filled-out" by Petitioner were from 2006; and Section 6.01 was in the Charter Oak Trust Document in January 2007. Clearly this constitutes a violation of the five-year Statute of Limitations. The Supreme Court's decision in *Kokesh v. S.E.C.*, 137 S.Ct. 1635 (2017) is based on *Gabelli v. S.E.C.*, 568 U.S. 442 (2014) and stated that the five year statute of limitations is absolute. So a good "*Berger*-qualified" prosecutor would have examined the piece of evidence and, instead of defaming Petitioner to Judge Chatigny in his closing argument, would have stopped in mid-sentence and said something like:

I am sorry Your Honor, but I just realized that this email mentions Section 6.01, which is the Section of the Charter Oak Trust we accused the Defendant of amending so he could buy a Beach House in Rhode Island and because it was clearly written in May of 2009—we might have a Statute of Limitations problem because the Superseding Indictment of May 2014 clearly broadened the Original Indictment, which had no mention of Money Laundering or the Rhode Island Beach House. It could be that the Defendant is totally innocent of all the charges against him and that the Statute of Limitations bars his prosecution because we know there were no Charter Oak Trust applications filled out after 2008. Please let me discuss with my colleague AUSA Novick to see if we should dismiss all charges against the Defendant.

Obviously, Ali Nejad had far better prosecutors than Petitioner did—but this Court can now do justice and correct the record by disqualifying AUSA Patel form this case for how he *used* the "ESAD" email and for not providing the January 2016 Waesche Affidavit to Petitioner because it was clearly *Brady-Jencks-Giglio-Bagley* evidence that was not turned over to the Petitioner at this trial in front of Judge Chatigny.

IV. **CONCLUSION**

Therefore, for the reasons listed above, Petitioner respectfully moves this Court to disqualify AUSA Neeraj Patel from having anything to do with Petitioner's 2241 Petition looking to vacate the conviction in his Boston Case due to his palpable prejudice against Petitioner and for his unprofessional and unlawful conduct in Petitioner's case in front of Judge Chatigny.

                                                          Respectfully Submitted,
                                                          Daniel E. Carpenter
                                                          Petitioner, *pro se*

                                                          /s/ Daniel E. Carpenter
                                                          Daniel E. Carpenter
                                                          Petitioner, *pro se*
                                                          18 Pondside Lane
                                                          West Simsbury, CT 06092

## CERTIFICATION

      I hereby certify that on this 23rd day of June, 2022, a copy of the foregoing was filed at the District of Connecticut Clerk's office in Hartford 450 Main Street, Hartford, CT 06103. Notice of this filing was also sent by USPS to US Attorney's Office Hartford Office, US Attorney's New Haven Office, Connecticut Financial Center, 157 Church Street, Floor 25, New Haven, CT 06510 and by USPS to Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

      By /s/ Daniel E. Carpenter
      Daniel E. Carpenter
      Petitioner, *pro se*